IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WILLIAM E. DAVENPORT,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

Case. No. 6:12-cv-00451-CL

FINDINGS AND
RECOMENDATION

CLARKE, Magistrate Judge:

    William Davenport ("plaintiff") brings this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

Page 1 – FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On April 27, 2009, plaintiff protectively applied for SSI. Tr. 13, 107–09. His application was denied initially on October 5, 2009, and upon reconsideration on December 29, 2009. Tr. 13, 70–73, 81–83. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 13, 84–85. On July 20, 2011, plaintiff appeared and testified at the ALJ hearing before the Honorable John J. Madden, Jr. Tr. 13, 27. An impartial vocational expert ("VE") also appeared and testified at the hearing. *Id.* On August 29, 2011, ALJ Madden issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13–22. The Appeals Council denied plaintiff's request for review on February 2, 2012, making the ALJ's decision the final decision of the Commissioner. Tr. 1–3. Plaintiff thereafter filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on September 3, 1957, plaintiff was 51 years old on the alleged onset date of disability[1] and 53 years old at the time of the hearing. Tr. 32–33. He did not graduate from high school, but later earned a GED. Tr. 33. Plaintiff previously worked as a gas pumper. Tr. 34, 110. Plaintiff alleges disability beginning April 27, 2009 due to chronic back and leg pain caused by degenerative disc disease, nausea, vomiting, depression, bipolar disorder, hepatitis C, and a somatization disorder. Tr. 118; Pl.'s Opening Br. 1.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v.*

---

[1] Plaintiff initially alleged an onset date of September 10, 2002, which was the onset date listed on his prior SSI application. Tr. 107. That application was denied. Tr. 29–31, 113. The earliest an SSI claimant can obtain benefits is the month after which he filed his application. 20 C.F.R. § 416.335. For that reason, at the hearing plaintiff amended his alleged onset date to April 27, 2009, his protective filing date. Tr. 31.

Page 2 – FINDINGS AND RECOMMENDATION

*Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massechi v. Astrue*, 486 F. 3d 1149, 1152 (9th Cir. 2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the claimant's impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial

gainful activity." *Id.*; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Id.*; 20 C.F.R. § 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## DISCUSSION

I. The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 27, 2009, the alleged onset date. Tr. 15. At step two, the ALJ determined that plaintiff had the following severe impairments: depressive disorder and polysubstance abuse in full remission. *Id.* The ALJ also noted that plaintiff had been diagnosed with mild degenerative disc disease but found that this impairment was not severe. *Id.* At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

The ALJ continued the sequential evaluation process to determine how plaintiff's impairments affected his ability to work. The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he can perform "simple, but not detailed work or

Page 4 – FINDINGS AND RECOMMENDATION

instructions [and] would be more successful in an independent work environment, without close contact to the general public or coworkers." Tr. 17.

At step four, the ALJ concluded that plaintiff could not perform his past relevant work because he had no past relevant work. Tr. 21. Finally, at step five the ALJ concluded that there are jobs that exist in significant numbers in the national and local economies that plaintiff could perform despite his limitations. *Id.* These jobs included cleaner II (DOT 919.687-014, medium, SVP 1); janitor (DOT 381.687-014, medium, SVP 2); and battery stacker (DOT 727.687-030, medium, SVP 2). Tr. 21–22. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 22.

II. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ erred by: 1) discrediting his testimony; 2) rejecting the opinions of Allan Kirkendall, Ph.D., and Robin Rose, M.D.; and 3) failing to include all of his limitations in the dispositive hypothetical question posed to the VE at step five. *See* Pl.'s Opening Br. 13.

A. Plaintiff's Credibility

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting his testimony. In deciding whether to accept subjective symptom testimony, the ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the

Page 5 – FINDINGS AND RECOMMENDATION

symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When there is "'affirmative evidence suggesting . . . malingering' in the record, the ALJ's reasons for rejecting the claimant's testimony need not reach the clear and convincing standard." *Brown v. Astrue*, 405 Fed.App. 230, 232 (9th Cir. 2010) (quoting *Smolen*, 80 F.3d at 1283–84). Rather, under these circumstances, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

Initially, as the Commissioner notes, the record contains numerous reports that indicate plaintiff was malingering.[2] Tr. 214 (report of Frank Lahman, Ph.D., reflecting that plaintiff exhibited "deficits in motivation and excessive focus on physical symptoms," as well as "[l]ack of vocational direction"), 258–59 (emergency room report of Richard Bower, M.D., noting that plaintiff's complaints primarily centered on "not being granted disability"), 270 (report of Dr. Kirkendall, finding that "there is an element of malingering in this applicant"), 296 (report of Martin Kehrli, M.D., noting the various indications of malingering and concluding that plaintiff "has little motivation to work but much motivation to receive disability"). Although this evidence clearly demonstrates plaintiff's tendency to exaggerate his symptoms and his

---

[2] Malingering is the intentional feigning or exaggeration of an illness to achieve a particular goal. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders IV-Text Revision 739 (4th ed. 2000) ("DSM IV-TR").

Page 6 – FINDINGS AND RECOMMENDATION

preoccupation with securing SSI, only Dr. Kirkendall made an affirmative finding of malingering. Tr. 270. The conclusion of one examining physician, in a record containing seventeen other medical source opinions, may not rise to the level of affirmative evidence. *See, e.g., Thebo v. Astrue*, 436 Fed.App. 774, 775 (9th Cir. 2011) (affirmative evidence of malingering existed where four acceptable medical sources made independent affirmative findings of malingering).

In any event, the ALJ's credibility determination should be upheld, regardless of whether affirmative evidence of malingering exists in the record, because the ALJ provided numerous clear and convincing reasons, supported by substantial evidence, for finding plaintiff not credible. First, the ALJ found the medical record as a whole was not consistent with plaintiff's "outsized complaints of pain and functional limitation." Tr. 17. For example, multiple physicians noted that, despite reports of severe and debilitating pain, plaintiff's x-rays consistently showed only minimal degenerative change. *See* Tr. 223, 264, 356.[3] The ALJ also noted the inconsistency between plaintiff's complaints and the objective medical evidence is "exacerbated by his reluctance to wholeheartedly engage in the treatment options offered to him . . . and the belligerent, persecutory attitude he adopts when he does not receive what he believes he is entitled to." Tr. 17. While plaintiff is correct that a claimant cannot be denied benefits for failing to obtain treatment that would ameliorate his condition if he cannot afford such treatment, he

---

[3] Plaintiff contends that his exaggerated complaints are really a symptom of his somatization disorder. Pl.'s Opening Br. 18. Plaintiff, however, has not actually been diagnosed with a somatization disorder. Of the seventeen medical sources who contributed to the record, only one suggested such a disorder, and then only deemed it a potential issue to rule out. Tr. 271. Plaintiff has not followed up on or received treatment for this potential disorder, suggesting that it is not as disabling as he alleges. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (failure to seek medical treatment is a clear and convincing reason to reject claimant's testimony); *see also Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (diagnosis of a somatization disorder, which itself stems from the claimant's failure to follow the advice of his providers, does not contradict an adverse credibility finding).

Page 7 – FINDINGS AND RECOMMENDATION

fails to explain why he frequently changed providers, generally only visiting each once. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). This suggests that plaintiff was more interested in a diagnosis that would lead to a finding of disability than treating whatever ailment he may actually have. Furthermore, plaintiff's psychological ailments were shown to improve with medication, but he generally refused to take it. Tr. 19, 314; *see also Burch*, 400 F.3d at 681.

Second, the ALJ found plaintiff less than credible due to his sparse and inconsistent work history, general lack of work ethic, and stated desire not to return to work. Tr. 18. A claimant's poor work history is relevant to the issue of credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ gave clear and convincing reasons for discounting claimant's testimony based on the claimant's "extremely poor work history," showing "little propensity to work in her lifetime"). In this case, plaintiff's only official employment was a brief stint working part-time at a gas station in the early 1990s. Tr. 18. As is noted by several of plaintiff's medical providers, he is a poor historian and failed to consistently remember the exact year during which this employment occurred. Tr. 188, 197, 270, 331. Other times, plaintiff completely omits this work experience, instead reporting various other under-the-table short-term jobs, such as logger, warehouse dock worker, and firefighter. Tr. 18, 34. Essentially, the record reveals that plaintiff has not worked for the majority of his adult life. Accordingly, the ALJ's finding that plaintiff lacked credibility due to his poor work history is supported by substantial evidence.

Third, the ALJ found that plaintiff's history of belligerent, violent, uncooperative, and manipulative behavior towards treatment providers further eroded his credibility. Tr. 18. This reason is not directly challenged by plaintiff. *See* Pl.'s Opening Br. 18. The ALJ identified ample evidence from the record to support this finding. For example, when providers refused to conclude that he was disabled or refused to prescribe narcotic pain medication, plaintiff would

Page 8 – FINDINGS AND RECOMMENDATION

Case 6:12-cv-00451-CL    Document 21    Filed 07/09/13    Page 9 of 17

become irrational and combative, once blocking a provider from leaving the room and, on another occasion, threatening to confront a provider with a gun. Tr. 18, 176, 178, 217, 223, 258–59, 305. Plaintiff also demonstrated drug-seeking behavior by refusing all treatment other than narcotic medication, attempting to intimidate or manipulate providers into prescribing such medications, or taking narcotic pain medication that was not prescribed to him. Tr. 18–19, 177–78, 184, 217, 226, 305, 314. Thus, the record indicates that plaintiff's primary reason for seeking medical attention was to obtain more narcotics; he nearly always went to a new physician, only returning to those that would write him a narcotic prescription and not those suggesting alternative forms of treatment.

Finally, the ALJ concluded that plaintiff's "robust slate of daily activities, including housecleaning, cooking, reading, and babysitting" showed further exaggeration of his physical and mental limitations. Tr. 19. Conflict between a claimant's everyday activities and his subjective symptom testimony is a clear and convincing reason to reject that testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). In this case, plaintiff testified at the hearing that he spends 90% of his day home alone in his recliner. Tr. 55. Yet the third party function report completed by plaintiff's sister-in-law indicates an inconsistent level of activity. Tr. 144–51. Plaintiff was able to take care of his own grooming, including bathing and dressing, prepare his own meals, go fishing and hunting, socialize with family members and his neighbor, garden, care for his pet fish, babysit, and do household chores. *Id.* These rather extensive activities of daily living reported by plaintiff's lay witness belie his hearing testimony that he is disabled and unable to work.

The foregoing reveals that the ALJ provided a number of clear and convincing reasons, supported by substantial evidence, for finding the plaintiff not credible. Therefore, the ALJ's

Page 9 – FINDINGS AND RECOMMENDATION

decision regarding plaintiff's credibility should be affirmed.

B. Evaluation of the Medical Opinion Evidence

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Dr. Kirkendall and Dr. Rose. Pl.'s Opening Br. 13–14. In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* If the treating doctor's opinion is supported by medically acceptable clinical findings and is consistent with substantial evidence in the record, controlling weight is given. *Id.* Nonetheless, an ALJ may discount a treating doctor's uncontroverted opinion by providing "clear and convincing" reasons supported by the record. *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). If the treating doctor's opinion is in dispute, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1034 (9th Cir. 2008).

i. The Opinion of Dr. Kirkendall

On September 24, 2009, Dr. Kirkendall performed a one-time psychological examination on plaintiff so that he could "provide a clinical picture [of plaintiff's] day to day functioning." Tr. 268. Pursuant to this evaluation, Dr. Kirkendall reviewed plaintiff's past medical records, interviewed plaintiff, and performed a mental status exam. *Id.* Dr. Kirkendall concluded that plaintiff "would have a difficult time consistently understanding and remembering instructions. While he can sustain concentration and attention for brief periods of time[,] over a normal

workday this probably would not be possible. He is clearly not a persistent individual. He appears to have a very limited ability to interact socially." Tr. 271. However, Dr. Kirkendall noted that plaintiff "appeared to be very keen on making sure [I] knew just how disabled he [was] and how long he [had] been disabled," such that there was "certainly an element of malingering in this applicant." Tr. 270.

The ALJ gave Dr. Kirkendall's opinion "little weight" because he "discount[ed] the findings of the claimant's treatment providers as well as the findings and opinion of Dr. Salbador[4] in favor of his own assessment of the claimant, which is based primarily on the single diagnostic interview." Tr. 20.

The ALJ properly discounted the opinion of Dr. Kirkendall. The ALJ noted that Dr. Kirkendall's assessment was based primarily on a single diagnostic interview, the results of which were inconsistent with the other evidence of record. *Id.* As an examining physician, Dr. Kirkendall's opinion may be given less deference than that of a treating physician because treating physicians have "a greater opportunity to know and observe the patient as an

---

[4] To the extent plaintiff argues that the ALJ erred by relying on Dr. Salbador's opinion from 2005 because it was not inconsistent with Dr. Kirkendall's opinion and predated his amended alleged onset date, plaintiff's argument is rejected. *See* Pl.'s Opening Br. 14. Plaintiff is correct that many of Dr. Salbador's findings and observations correspond to Dr. Kirkendall's; however, unlike Dr. Kirkendall, Dr. Salbador did not opine that plaintiff's functional limitations precluded him from working. *Compare* Tr. 268–71 (Dr. Kirkendall's report), *with* Tr. 176–80 (Dr. Salbador's report). Further, the restrictions that the ALJ adopted from Dr. Salbador's assessment are beneficial to plaintiff, resulting in a more restrictive RFC. Finally, neither plaintiff nor his medical providers suggest a significant change in his condition since Dr. Salbador's 2005 evaluation. In fact, plaintiff claims to have been experiencing many of his allegedly disabling symptoms for the majority of his life and, further, the alleged onset date of disability is not the date he claims to have become unable to work. Tr. 269, 325 (reporting emotional problems since childhood and psychiatric treatment beginning in the early 1990s); *see also* Tr. 31 (plaintiff's previous SSI application for substantially the same ailments, alleging an onset date of September 2002). Plaintiff's counsel seemingly acknowledges this fact, arguing that plaintiff is disabled based on medical evidence from 2006 and 2007. *See* Pl.'s Reply Br. 1–2. Under these circumstances, the earlier report of Dr. Salbador was relevant to the ALJ's inquiry.

Page 11 – FINDINGS AND RECOMMENDATION

individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, the ALJ properly afforded less weight to Dr. Kirkendall's opinion than to that of plaintiff's treatment providers. Tr. 20. Moreover, plaintiff's medical record contains evidence from seventeen different providers over the past five years, most of whom performed only cursory one-time examinations. As the ALJ correctly noted, Dr. Kirkendall's opinion conflicts with the conclusions of plaintiff's treatment providers, who have "unanimously, and for the past five years, found claimant without significant psychological symptoms or functional limitations." *Id.*; *see also* Tr. 216–20, 221–56, 304–20, 337–58.

Additionally, the ALJ noted that Dr. Kirkendall's conclusions appeared to be based primarily on plaintiff's reports during a single examination. When a doctor's conclusions are premised "to a large extent upon the claimant's own accounts of his symptoms and limitations," those conclusions may be "disregarded where [the claimant's subjective] complaints have been properly discounted." *Morgan*, 169 F.2d at 602 (citation and internal quotations omitted). As discussed above, the ALJ properly discounted plaintiff's subjective testimony. Further, Dr. Kirkendall's finding of malingering indicates that he found plaintiff's statements regarding the extent of his impairments less than credible, which is internally inconsistent with Dr. Kirkendall's ultimate conclusion regarding plaintiff's ability to work. *See id.* at 603 (medical opinion evidence may be discredited due to internal inconsistencies). Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Dr. Kirkendall's opinion.

    ii. The Opinion of Dr. Rose

On July 7, 2011, Dr. Rose performed a one-time examination on plaintiff to evaluate his alleged physical impairments. Dr. Rose concluded that plaintiff suffered from degenerative disc

disease, rheumatoid arthritis, and bipolar disorder or schizoid personality disorder. Tr. 332. Dr. Rose further opined that plaintiff was "incapable of participating in the customary work environment, in part due to his physical pain, but this intensified and exacerbated by the mental illness that frames his clinical picture." Tr. 334.

The ALJ discounted the opinion of Dr. Rose because it was "based largely upon a single interaction and discounts the extensive evidence of the claimant's manipulative role in how his mental health symptoms have been assessed and treated." Tr. 20. Thus, Dr. Rose's opinion was discounted for essentially the same reasons as Dr. Kirkendall's opinion. Tr. 20. As previously discussed, the one-time evaluation of an examining physician may be given lesser deference than the opinion of a treating physician. *Sprague*, 812 F.2d at 1230. Here, Dr. Rose's conclusion that plaintiff is "incapable of participating in the customary work environment" conflicts with the record as a whole. *Compare* Tr. 334, *with* Tr. 216–20, 221–56, 304–20, 337–58. The ALJ properly resolved the conflict in medical testimony in favor of plaintiff's treatment providers. *See Morgan*, 169 F.3d at 603 ("[t]he ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity"). Further, like Dr. Kirkendall, Dr. Rose primarily based her opinion on plaintiff's subjective symptom testimony, which the ALJ properly discredited. *See id.* at 602. For the reasons discussed above, the ALJ properly rejected Dr. Rose's assessment. Therefore, the ALJ's assessment of the medical evidence should be affirmed.

C. The ALJ's Hypothetical Questions and Step Five Finding

Finally, plaintiff asserts that the ALJ's step five finding was invalid because the ALJ's RFC and, by extension, the hypothetical questions posed to the VE, failed to include the limitations identified by Drs. Kirkendall and Rose. Plaintiff also contends that the ALJ's RFC and step five determination were erroneous because they did not reflect his moderate limitations

in social functioning and in concentration, persistence, or pace. *See* Pl.'s Opening Br. 20. As discussed above, the opinions of Drs. Kirkendall and Rose were properly discounted. Consequently, the ALJ was not required to include the limitations identified by Drs. Kirkendall and Rose in either the RFC or the hypothetical question posed to the VE. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1211, 1173–76 (9th Cir. 2005); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1173–76 (9th Cir. 2005).

With regard to plaintiff's other allegation of error, "[t]he term 'moderate' does not [necessarily] indicate a degree of limitation that must be expressly reflected in the RFC assessment." *Davis*, 2012 WL 4005553 at *18 (citation and internal quotations omitted). Rather, "mild, moderate, or severe limitations, in the broad categories of activities of daily living, social functioning, and concentration, persistence, or pace, that are assessed as part of the psychiatric review technique 'are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Brink v. Astrue*, 2013 WL 1785803, *5 (D.Or. Apr. 24, 2013) (quoting SSR 96-8p, *available at* 1996 WL 374184, *4); *see also* Tr. 16 ("[t]he limitations identified in the paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment").

The "RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." *Brink*, 2013 WL 1785803 at *5. This more detailed assessment is based on all of the relevant evidence of record, including "'statements about what you can still do made by nonexamining physicians and psychologists.'" *Id.* (quoting 20 C.F.R. § 416.913(c)); *see also* SSR 96–8p, *available at* 1996 WL 374184, *5;

Page 14 – FINDINGS AND RECOMMENDATION

*Rogers v. Comm's of Soc. Sec. Admin.*, 490 Fed.App. 15, 17–18 (9th Cir. 2012) (moderate impairments assessed on a psychiatric review technique form "in broad functional areas used at steps two and three" did not equate to concrete work-related limitations for RFC; rather, "the RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinions"). Accordingly, "a RFC to perform simple, repetitive tasks can be sufficient to accommodate a claimant's moderate limitations in attention, concentration, and social abilities." *Davis*, 2012 WL 4005553 at *10 (citation and internal quotations omitted).

In this case, the record indicates that the ALJ's RFC restriction to "simple, but not detailed work or instructions [carried out in an] independent work environment, without close contact to the general public or coworkers" is sufficient to account for the moderate impairments assessed at steps two and three. Tr. 17.

With regard to plaintiff's limitations of concentration, persistence, or pace, the record indicates that plaintiff is capable of carrying out simple tasks despite this limitation. For example, plaintiff reported doing his own grocery shopping, gardening, and helping with household chores, including occasionally mowing his neighbor's lawn. Tr. 42, 46–47, 55–56. Plaintiff also enjoys reading and watching television, and is capable of following along. Tr. 179. The ALJ noted that "[plaintiff's] ability to maintain and coordinate his daily schedule and medical appointments also indicates at least a basic level of organization." Tr. 16. Plaintiff's physicians expressed similar opinions. For example, Dr. Salbador assessed plaintiff as having mild to moderate limitations in concentration and attention but noted that "[h]e is able to spell 'world' forwards and backwards without difficulty and overall appears to be fairly facile with his mental processes. . . . [H]e is able to follow a 3-step command without difficulty." Tr. 179–80.

Page 15 – FINDINGS AND RECOMMENDATION

Dr. Kehrli described plaintiff as moderately impaired in his ability to "carry out detailed instructions" and his ability "to maintain attention and concentration for extended periods," but nonetheless capable of completing "a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 288–89.

With regard to plaintiff's social functioning, the record indicates that, although plaintiff dislikes social interactions and has demonstrated anger issues in the past, he is capable of limited social interaction. *See* Tr. 217. For example, plaintiff reported going hunting with his brothers, spending time with his niece and nephew, and visiting with his neighbor. Tr. 44, 135, 179. Plaintiff's sister-in-law reported that, while plaintiff does not attend family gatherings as often as he used to, he keeps in touch with friends and family over the phone. Tr. 148–49. Additionally, Dr. Salbador noted that although plaintiff was mildly impaired in social functioning, he was also pleasant, friendly, and cooperative. Tr. 179–80.

In sum, the RFC need only reflect limitations that are supported by substantial evidence. The record in this case demonstrates that plaintiff has moderate limitations in social functioning and in concentration, persistence, or pace, but is nonetheless capable of performing simple work, in an independent work environment, without close contact with others. Furthermore, plaintiff failed to specify what additional restrictions should have been included in the RFC as a result of his moderate limitations in these areas. *See* Pl's Opening Br. 19–20. Regardless, the Court finds that the ALJ's RFC determination and dispositive hypothetical adequately accounted for plaintiff's moderate limitations in social functioning and in concentration, persistence, or pace. Therefore, the ALJ's RFC assessment and step five finding should be affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days from service of the Findings and Recommendation. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 7 day of July, 2013.

_____
Mark D. Clarke
United States Magistrate Judge